UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PAUL LOPEZ,

    Plaintiff

v.

HOMAN, et. al.,

    Defendants

Case No.: 3:19-cv-00098-RCJ-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 20

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a Motion for Partial Summary Judgment filed by some of the defendants to this action: former Governor Brian Sandoval, Secretary of State Barbara K. Cegavske, former Attorney General Adam P. Laxalt, Governor Steve Sisolak, and Attorney General Aaron Ford, who are current or former members of the Board of Prison Commissioners. (ECF Nos. 20, 20-1 to 20-5, errata at ECF Nos. 21, 21-1.) Plaintiff filed a response. (ECF Nos. 22, 22-1.) Defendants filed a reply. (ECF No. 23.)

After a thorough review, it is recommended that the motion be granted.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding with this action pursuant to 42 U.S.C. § 1983. He paid the full filing fee and is represented by counsel. The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP).

Plaintiff filed his complaint on February 20, 2019. (ECF No. 1.) The court initially stated that it would not screen the case as Plaintiff was represented by counsel. (ECF No. 5.) Defendants nevertheless filed a motion requesting that the court screen the complaint. (ECF No. 6.) While the court does not view screening counseled cases to be an efficient use of judicial resources because the concerns underlying screening pursuant to 28 U.S.C. § 1915A are not typically present in counseled cases, the court nevertheless granted the motion because the statute does not distinguish between cases filed by prisoners that are pro se or represented by counsel.

Plaintiff's complaint alleges that an assault occurred at ESP on April 12, 2017, and two prisoners were stabbed by other prisoners. They were transported to a local hospital and were treated, and survived their injuries. Defendants Gittere and Homan were assigned to investigate. On April 14, 2017, Plaintiff was placed in administrative segregation pending investigation of the assaults. On April 19, 2017, Homan submitted a notice of charges (NOC) against Plaintiff for murder (even though the two victims survived). The NOC did not allege Plaintiff was physically involved or that either victim had died, but instead asserted that confidential information indicated Plaintiff was the inmate who ordered the attacks on the two victims. Defendant Manning served Plaintiff with the NOC for murder on May 1, 2017. Plaintiff entered a plea of not guilty.

Plaintiff alleges that Manning knew neither victim died, but referred the matter for a disciplinary hearing on the murder charge. On May 4, 2017, Plaintiff was placed on High Risk Potential (HRP) status in the prison infirmary by defendant Filson based on the murder charge even though he had not had a hearing or displayed behavior justifying the classification. He was placed in a suicide-watch type cell, without windows, for nearly 24 hours a day; the lights were

on 24 hours a day, causing him sleep deprivation; he had to endure excessively loud noises from behavior of mentally ill inmates being housed in the infirmary, which also caused him sleep deprivation and psychological distress; and, he hardly received any outdoor recreation.

The disciplinary hearing took place on September 6, 2017. Defendant Bryant became the charging officer, and Plaintiff was charged with murder, even though Bryant knew that no one died from the assaults.

Defendant Huston was the disciplinary hearing officer. Plaintiff pled guilty again, and requested witnesses (the two victims, the assailants, and staff associated with the matter). Huston denied the victims as witnesses for unspecified security reasons even though their identities had already been revealed to Plaintiff through the NOC. He denied the perpetrators as witnesses for unspecified security reasons, even though the NOC alleged and intimated Plaintiff was already associated with them for having ordered the assaults. In the hearing summary, Huston stated that he spoke with the perpetrators, but did not indicate what he was told. Huston denied the staff witnesses because he claimed Plaintiff did not give specific names; but, Huston stated in the hearing summary that staff had submitted reports. Plaintiff was not privy to the reports and did not know which staff had knowledge of the facts. Huston found Plaintiff guilty of the murder charge even though there was no evidence to support the charge and he was not allowed to call any witnesses. Huston sanctioned Plaintiff to 12 months in disciplinary segregation, restitution, and referred him to the Attorney General's Office for criminal prosecution, but there was no forfeiture of good time credits. Plaintiff alleges that if he had been allowed to call witnesses, they would have testified that no murder occurred and he had nothing to do with ordering the assaults.

Plaintiff appealed the disciplinary conviction to defendant Filson at the first level. Filson was aware no one died from the assaults, but denied the appeal.

Plaintiff filed a second level disciplinary appeal, but does not recall ever receiving a response. He believes defendant Tristan denied the second level appeal even though Tristan knew no one died.

Particularly relevant to the instant motion, Plaintiff alleges that there was a policy, practice or custom of allowing prisoners to be charged and convicted of murder violations despite no one having been killed, and that was promulgated, permitted and/or enforced by defendants former Governor Sandoval, Secretary of State Cegavske, former Attorney General Laxalt, Dzurenda, Tristan, Filson, Gittere, and Reubart, and this was the driving force behind Plaintiff being convicted and sanctioned for murder even though no one had died. He further avers that the newly elected prison commissioners, Governor Sisolak and Attorney General Ford, joined in this policy, practice or custom.

On screening, the court allowed Plaintiff to proceed with these claims asserted in the complaint: (1) a Fourteenth Amendment/Article 1, Section 8 of the Nevada Constitution due process claim against Homan and Bryant based on allegations that they subjected him to a murder charge that was unsupported by evidence; (2) a Fourteenth Amendment/Article 1, Section 8 of the Nevada Constitution due process claim against Manning based on the allegation that he served Plaintiff with the NOC for murder that was unsupported by evidence as he knew that no one died; (3) a Fourteenth Amendment/Article 1, Section 8 of the Nevada Constitution due process claim against Huston based on allegations that he found Plaintiff guilty of the murder charge without any evidence and denied Plaintiff's request to call witnesses; (4) a Fourteenth Amendment/ Article 1, Section 8 of the Nevada Constitution due process claim against Filson based on allegations that he placed Plaintiff on HRP status for being charged with murder when he knew the charge was devoid of evidence and that Plaintiff posed no physical

management problem to staff, resulting in confinement under harsh conditions; (5) an Eighth Amendment/Article 1, Section 6 of the Nevada Constitution claim that Filson placed Plaintiff on HRP status under the conditions described in the fourth cause of action (deprivation of exercise, constant illumination, and with excessive noise) and that he was denied regular psychological checkups while suffering psychologically when he was housed on HRP status; (6) a Fourteenth Amendment/Article 1, Section 8 of the Nevada Constitution due process claim against Filson and Tristan based on allegations that they denied his appeal when they knew the murder charge was devoid of evidence because no one died; (7) a Fourteenth Amendment/Article 1, Section 8 of the Nevada Constitution due process claim against former Governor Sandoval, Governor Sisolak, Secretary of State Cegavske, former Attorney General Laxalt, Attorney General Ford, Dzurenda, Tristan, Filson, Gittere and Reubart based on allegations that they promulgated, permitted or enforced a policy, practice or custom of allowing prisoners to be charged, convicted, and sanctioned for murder despite the fact that no one had died from inmate on inmate assaults, and this was the driving force behind Plaintiff's conviction, sanction and placement on HRP status under extreme conditions; (8) an Eighth Amendment/Article 1, Section 6 of the Nevada Constitution claim against former Governor Sandoval, Governor Sisolak, Secretary of State Cegavske, former Attorney General Laxalt, Attorney General Ford, Dzurenda, Tristan, Filson, Gittere, and Reubart, based on allegations that these defendants violated his right against cruel and unusual punishment when they promulgated, permitted or enforced this policy. (Screening Order, ECF No. 14.) Thus, the action is proceeding against defendants: Ronald Bryant, Secretary of State Barbara Cegavske, James Dzurenda, Timothy Filson, Attorney General Aaron Ford, William Gittere, Dennis Homan, Robert Huston, Attorney General Adam Laxalt, Scott Manning, William Reubart, Brian Sandoval, Steve Sisolak, and David Tristan.

1    On September 6, 2019, Defendants filed their answer. (ECF No. 19.) On the same date, this motion for summary judgment was filed by former Governor Sandoval, Secretary of State Cegavske, former Attorney General Laxalt, Governor Sisolak, and Attorney General Ford. (ECF No. 20.) Only the seventh and eighth causes of action pertain to these defendants and are at issue in this motion.

Preliminarily, the moving defendants assert that the charge of murder is classified as an MJ 16 charge, under Administrative Regulation (AR) 702. They claim that the charge was appropriate, even though the victims survived, because AR 702.02.5 defines the murder charge as "the unlawful killing of another human being with malice aforethought, either express or implied, *and all lesser included offenses*." They further argue: (1) Defendants, as members of the Board of Prison Commissioners, have Eleventh Amendment immunity with respect to any official capacity money damages claim Plaintiff brings against them as they are not persons that may be sued under 42 U.S.C. § 1983; (2) Plaintiff does not seek injunctive relief and therefore cannot proceed against these Defendants in their official capacities; (3) there are no facts to establish the Defendants' personal participation in the alleged constitutional violations; (4) Sandoval, Laxalt and Cegavske are entitled to qualified immunity and discretionary immunity to the extent they are sued in their individual capacities; and (5) there are no facts to establish liability on the part of these Defendants in the seventh and eighth causes of action asserted against them.

Plaintiff argues: (1) as prison commissioners sued in their official capacities for prospective relief (Cegavske, Ford and Sisolak) are not entitled to immunity from suit; (2) the Defendants did personally participate in the alleged constitutional violation when they approved the policy at issue, which is the moving force behind the alleged constitutional violations;

(3) Cegavske, Ford, and Sisolak are not entitled to qualified immunity; and (4) Defendants are not entitled to summary judgment on the seventh and eighth causes of action because constitutional violations did occur.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Official Capacity**

Governor Sisolak and Attorney General Ford are sued only in their official capacities. Former Governor Sandoval, former Attorney General Laxalt, and Secretary of State Cegavske are sued in their official and individual capacities.

Defendants argue that they are entitled to summary judgment insofar as they are sued in their official capacities. The court finds, *infra*, that Defendants are entitled to summary judgment because there is no evidence that they personally participated in the alleged constitutional violations; however, the court will include a preliminary discussion regarding how these Defendants may be sued and for what relief in their official versus individual capacities.

Defendants argue that the State is immune from suit under the Eleventh Amendment, and the Board of State Prison Commissioners is a State agency with board members who are certain elected officers of the State; therefore, Defendants argue that neither the Board nor its members can be sued in their official capacity for money damages under section 1983.

Plaintiff states that he is not seeking monetary damages from Cegavske, Ford and Sisolak in their official capacities. Instead, Plaintiff asserts that he seeks prospective relief; therefore, he may proceed against Cegavske, Ford and Sisolak in their official capacities. The prospective relief he seeks includes that the policy, practice or custom of allowing prisoners to be charged and convicted of murder when no one has died by seeking a declaratory judgment finding that the policy is unconstitutional as violative of the Fourteenth Amendment's Due Process Clause. In

addition, he seeks an injunction ordering Defendants to expunge the notice of charges and the MJ:16 murder charge from his prison records.

The State and agencies that are an arm of the State are immune from suit and are not persons who can be sued under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); U.S. Const. amend XI. Plaintiff has not sued the State or the Board of Prison Commissioners, but only members of the Board of Prison Commissioners; therefore, they are not entitled to summary judgment on this basis. A state official sued in his or her *official capacity* for *monetary damages*, however, is not a person under Section 1983. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n. 24 (1997); *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1981); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Therefore, Plaintiff cannot proceed with his claims against these defendants in their *official* capacity for *monetary damages*.

Defendants acknowledge that state officials sued in their official capacity for *injunctive relief* are considered persons for purposes of section 1993, because actions against them for prospective relief are not treated as an action against the state. *See Will,* 491 U.S. at 71 n. 10; *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). Defendants argue, however, that Plaintiff has not and cannot seek injunctive relief against the board members. Initially, they assert that Plaintiff is limited to seeking injunctive relief against the current board members—Governor Sisolak, Attorney General Ford, and Secretary of State Cegavske—and not the former board members—former Governor Sandoval and former Attorney General Laxalt—who could not effectuate any injunctive relief. Then, Defendants contend that Plaintiff's prayer for relief does not seek any injunctive relief against the board members, but

only compensatory damages, declaratory relief, punitive damages, interest, costs and attorney fees, and "other and further relief as the Court deems just under the circumstances."

Defendants are correct, and Plaintiff appears to acknowledge[1], that Plaintiff cannot seek prospective injunctive relief with respect to the *former* board members—former Governor Sandoval and former Attorney General Laxalt—insofar as they are sued in their official capacity. *See Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citations omitted) (plaintiff must identify law or policy challenged and "name the official within the entity who can appropriately respond to injunctive relief").

At this point, Plaintiff is left with his *official* capacity *injunctive* relief claims against Governor Sisolak, Attorney General Ford, and Secretary of State Cegavske, and his *individual* capacity *monetary damages* claims against former Governor Sandoval, former Attorney General Laxalt, and Secretary of State Cegavske.

The court must now consider whether Plaintiff can proceed with his *official capacity injunctive* relief claims against Governor Sisolak, Attorney General Ford and Secretary of State Cegavske. Again, official capacity actions for injunctive relief are not treated as an action against the state itself. Moreover, the Ninth Circuit noted in *Jackson v. Hayakawa,* 682 F.3d 1344 (9th Cir. 1982), that "[i]t has been clear since *Ex Parte Young*, 209 U.S. 123 (1908), that the Eleventh Amendment does not bar actions against state officers in their official capacities if the plaintiffs seek only *a declaratory judgment or injunctive relief*." *Jackson*, 682 F.3d at 1350 (citations omitted, emphasis added).

---

[1] *See* argument at ECF No. 22 at 4-5, n. 1, 6, noting that current Board members consist of Sisolak, Cegavske, and Ford.

Plaintiff asks for *declaratory relief* finding that the policy, practice or custom of allowing prisoners to be charged, convicted, and sanctioned for murder violations despite the fact that no one has died from alleged inmate on inmate assaults is unconstitutional. Therefore, he states official capacity declaratory relief claims against Governor Sisolak, Attorney General Ford and Secretary of State Cegavske.

Defendants further argue that any such relief would be directed to corrections staff, and not to them, to have any impact. Plaintiff argues that under Nevada law, Cegavske, Ford and Sisolak are prison officials in their capacity as members of the Board of Prison Commissioners and are responsible for supervision of all matters connected with the state prison as may be provided by law, citing Nevada Constitution, Article 5, Section 21 and Nevada Revised Statutes 209.101, 209.113, 209.361. Plaintiff asserts that because the Board is ultimately responsible for the establishment of NDOC administrative policies, any change in policies and practices must be approved by the Board to be given full force and effect.

The head of the NDOC is the Board of State Prison Commissioners. Nev. Rev. Stat. 209.101. The Board shall "[p]rescribe regulations for carrying on the business of the Board and the [NDOC]." Nev. Rev. Stat. 209.111. The Director is responsible to the board. Nev. Rev. Stat. 209.121(2)(b). The Director is responsible for establishing regulations with the approval of the Board. Nev. Rev. Stat. 209.131(6).

Assuming Plaintiff could establish that these Defendants were liable for the alleged constitutional violations and Plaintiff was entitled to the declaratory relief sought, the Director of NDOC would be responsible for promulgating any revision to the AR, and the Board Members *would then need to approve amended AR 707*. Again, assuming there is a valid basis for liability against them, they would be proper defendants for purposes of effectuating injunctive relief.

## B. Personal Participation

Next, regardless of the capacity in which they are sued, Defendants argue that Plaintiff cannot prove any set of facts showing that they personally participated in the alleged constitutional violations.

Defendants argue that they were not involved in the investigation of the alleged charge, they did not sit on the disciplinary review committee, they did not speak to any of the victims, perpetrators or staff members, and did not review the grievances filed by Plaintiff relevant to the disciplinary action. As such, they contend they had no personal participation in the alleged constitutional violation. They assert that Plaintiff cannot provide any set of facts establishing the personal involvement of the board members in any of the events that are the basis of this action; therefore, they are entitled to summary judgment.

Plaintiff argues that supervisory liability exists even without overt personal participation in the offensive act if the supervisory officials implement a policy so deficient that the policy "itself is a repudiation of constitutional rights" and is "the moving force of the constitutional violation." Plaintiff contends this is direct liability which allows an action against a supervisor as long as there is sufficient causal connection. Plaintiff maintains that the board members personally participated in the approval of the murder charge policy that Plaintiff challenges, and that is a repudiation of his rights, and the moving force behind the alleged constitutional violations.

In their reply, Defendants argue that to hold the board members liable, they must do more than simply approve a regulation brought to them, arguing that deference must be given to the judgment of prison authorities. They further argue that they are permitted to rely on the

Director's expertise, who drafts the ARs for the Board's consideration. Therefore, Defendants contend they did not have any "culpable action" with respect to AR 707.

"'Under section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*. (quoting *Hansen*, 885 F.2d at 646).

The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir. 2013) (citations and internal quotation marks omitted). "The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or should have known would cause others to inflict a constitutional injury." *Id*. (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

In addition, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley v. Bannister,* 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen*, 885 F.2d at 646) (internal quotation marks omitted). This is the type of claim Plaintiff seeks to bring against these government official defendants.

1    Causation is essential to this type of claim. *See Crowley*, 734 F.3d at 977 (citing *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012), *cert. denied*, No. 12-1296, 2013 WL 1808554 (Oct. 7, 2013)). In *OSU Student Alliance*, the Ninth Circuit stated: "Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability...*so long as the policy proximately causes the harm*—that is, *so long as the plaintiff's constitutional injury in fact occurs pursuant to the policy*." *OSU,* 699 F.3d at 1076 (emphasis added). The Ninth Circuit expressly agreed with the Tenth Circuit, which held: "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor of her subordinates) of which 'subjects, or causes to be subject' that plaintiff 'to the deprivation of any rights...secured by the Constitution...'" *OSU*, 699 F.3d at 1076 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

   Here, Plaintiff contends that there was a policy, practice or custom of allowing prisoners to be charged and convicted of murder violations despite no one having been killed, and that was promulgated, permitted and/or enforced by these Defendants and this was the driving force behind Plaintiff being convicted and sanctioned for murder even though no one had died as alleged in the seventh cause of action, and this was the force behind him being placed in confinement under the conditions discussed in his eighth cause of action.

   AR 707 is the alleged policy. AR 707 governs NDOC's inmate disciplinary process. (ECF Nos. 20-2, 20-3.) Inmates within NDOC are subject to disciplinary action for violations of rules and regulations. (ECF Nos. 20-2 at 2, 20-3 at 2.) AR 707 lists NDOC's disciplinary offenses. At the outset, the regulation states that the offenses listed in AR 707.02.3 through 707.02.6 "*also include an attempt or conspiracy to commit that violation*." (ECF Nos. 20-2 at 3,

15

1 20-3 at 6, AR 707.02.1, emphasis added.) AR 707.02.5 lists the "Major Violations." Included within the Major Violations is MJ 16, which is the disciplinary offense for murder. AR 707 defines murder as: "The unlawful killing of another human being with malice aforethought, either express or implied, *and all lesser included offenses*." (ECF Nos. 20-2 at 7, 20-3 at 9, emphasis added.) Therefore, contrary to Plaintiff's argument, reading the AR as a whole, it does appear to define what is meant by "lesser included offenses"—attempt and conspiracy.

Plaintiff argues that he was not charged with attempted murder or conspiracy to commit murder, but he was charged and convicted of murder. That does not mean that the regulation, as adopted and maintained by the Board Members, did not allow for the charge of attempted murder or conspiracy to commit murder. It cannot be said that the Board Members promulgated or maintained a policy allowing prisoners to be charged, convicted and sanctioned for murder when no one died, because the regulation includes the violations of attempt and conspiracy, and such offenses necessarily mean that the victim did not die. The decision regarding how to specifically charge Plaintiff was made by officials within NDOC involved in the disciplinary process, and not by the Board Members. Under these circumstances, the court finds that the Board Members did not *cause* Plaintiff's constitutional violation: charging and convicting him or murder despite the fact that no one died.

Plaintiff also argues that MJ-16 contains a mens rea element of malice aforethought, either express or implied, but he contends that the policy allows prisoners to be charged and convicted of murder without producing some evidence of malice aforethought or intent to kill.

Again, the murder charge also encompasses attempt and conspiracy offenses. In criminal law, typically, to commit attempt, there must be an intent to commit a particular crime. Murder may be committed without an intent to kill, but attempt to commit murder requires a specific

16

intent to kill. *Braxton v. United States*, 500 U.S. 344 (1991); *see also* Nev. Rev. Stat. 193.330(1) ("An act [is] done with the intent to commit a crime, but tend[s] but fail[s] to accomplish it[.]"); *Keys v. State*, 766 P.2d 270, 104 Nev. 736 (1988) ("[T]he performance of an act which tends, but fails, to kill a human being, when such acts are done with … the deliberate intention unlawfully to kill.").

A conspiracy occurs when one or more people agree to commit a crime. *Nunnery v. Eighth Judicial District Court*, 186 P.3d 886, 124 Nev. 477 (2008). Typically, the person being charged must have: (1) the intent required to commit the crime contemplated; and (2) the intent to act together in carrying out the agreed upon crime. *See* 4 Wharton's Criminal Law § 680 (15th ed.).

Contrary to Plaintiff's assertion, murder as it defined in MJ 16, as well as the offenses of attempted murder and conspiracy to commit murder, would require evidence of intent to kill. If the victim did not die, and there was no proof of intent to kill, presumably an inmate would be charged with a lesser crime such as battery (MJ3) ("any willful use of force or violence upon the person of another"), or manslaughter (MJ14), which is specifically defined in AR 707 as: "The unlawful killing of another human being *without malice either express or implied.* It may be either voluntarily, in the heat of passion, or involuntarily." (*See* ECF No. 20-2 at 5-6, emphasis added.) Whether there was the requisite amount of evidence to convict Plaintiff (*i.e.*, whether he had the requisite mental state), or whether he was even charged with the correct crime, was up to the disciplinary hearing officer and those assigned to review his appeals, not the Board Members.

Therefore, the moving Defendants should be granted summary judgment with respect to the seventh cause of action.[2]

With respect to the eighth cause of action, there is no evidence in the record that Plaintiff's designation as HRP status or his placement in confinement under the conditions alleged had any relationship to the Board Members approval of AR 707. Instead, Plaintiff alleges that defendant Filson placed him on HRP status and he was put in the suicide-watch type cell under atypical conditions. The court finds that the connection Plaintiff attempts to make between these Defendants' adoption, promulgation and maintenance of AR 707, which defines the disciplinary charge of murder within NDOC, and his placement on HRP status subject to the alleged unconstitutional conditions, is much too tenuous. In other words, the court does not find that the adoption or maintenance of this AR *caused* Plaintiff to be subject to the conditions he found himself housed in after he was charged with murder. Therefore, summary judgment should be granted in these Defendants' favor with respect to the eighth cause of action.

Plaintiff also brings these causes of action under the corollary provisions of the Nevada Constitution for due process and the prohibition against cruel and unusual punishment.

Defendants argue for the first time in their reply that they are entitled to summary judgment because there is no private cause of action based on Article 1, Section 8 of the Nevada Constitution (Nevada's Due Process Clause). (ECF No. 23 at 11-12.) They argue that the Nevada Supreme Court has not recognized a common law right of action under the Nevada Constitution's

---

[2] The court does not address at this time whether Plaintiff's charge for murder could in fact be construed as a charge for a lesser offense of attempt or conspiracy even the disciplinary charge and conviction only refers to murder, whether Plaintiff was charged with the correct crime (whether there was sufficient evidence to support the conviction), as those arguments are properly raised by the defendants involved in the disciplinary process.

18

mandate of due process, and has only addressed due process claims when property or liberty interests are at stake.

Both "[t]he United States and Nevada Constitutions provide that no person shall be deprived of liberty without due process of law." *Scarbo v. Dist. Ct.*, 206 P.3d 975, 979 (2009), 125 Nev. 118, 124 (2009); Nev. Const. art. 1, § 8. Those due process protections apply "when government action deprives a person of liberty or property." *State ex rel. Bd. of Parole Com'rs v. Morrow,* 255 P.3d 224, 227, 127 Nev. 265, 271 (2011) (citation and quotation marks omitted). Defendants overlook the fact that Plaintiff is asserting a violation of a liberty interest.

They also argue in their reply that Nevada does not provide a private right of action Article 1, Section 6 of the Nevada Constitution (the prohibition against cruel and unusual punishment), and that Nevada only recognizes such claims in the context of criminal sentencing. (ECF No. 23 at 12-13.) While the cases under Nevada's cruel and unusual punishment clause do seem to arise in connection with sentencing, there does not seem to be authority that an inmate cannot argue a conditions of confinement claim under Nevada's Constitution.

Nevada courts have noted the similarity between the federal and state constitutions, and frequently look to federal precedent to guide their analysis. *See e.g. Hernandez v. Bennett-Haron,* 287 P.3d 305, 310, 128 Nev. 580, 587 (2012) (citation omitted). Therefore, as with the United States Constitution, in order to violate these provisions of the Nevada Constitution, one would have had to personally participate in the violation. For the reasons discussed above, these Defendants are entitled to summary judgment on the corollary Nevada Constitution claims asserted against them in the seventh and eighth causes of action.

As a result of these findings, the court need not reach Defendants' remaining arguments, and the moving Defendants' motion for summary judgment should be granted.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** the Motion for Summary Judgment (ECF No. 20) filed by certain defendants to this action—former Governor Sandoval, former Attorney General Laxalt, Secretary of State Cegavske, Governor Sisolak and Attorney General Ford—for the reasons stated herein. The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 11, 2020

_____
William G. Cobb
United States Magistrate Judge